**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION**

| | |
|---|---|
| **EVA MAE ADKINS, etc.,** ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OPINION** |
| v. ) | Case No. 1:10cv00041 |
| ) | |
| **EQT PRODUCTION COMPANY,** ) | |
| Defendant ) | |

This matter is before the court on EQT Production Company's Motion For A Protective Order On Production Of Emails And Other Electronically Stored Information, (Docket Item No. 170) ("Motion"). The Motion was heard by the undersigned on May 1, 2012. Based on the arguments and representations of counsel, and for the reasons stated below, the Motion will be granted in part and denied in part.

*I. Facts and Procedural History*

The plaintiff, Eva Mae Adkins, sues on behalf of herself and others similarly situated. Adkins currently sues EQT Production Company, (formerly known as Equitable Production Company and Equitable Resources Energy Company) ("EQT"). The Complaint alleges that Adkins and the class members own certain gas estate interests in coalbed methane, ("CBM"), gas fields in Dickenson County, Virginia, and are entitled to royalty payments from EQT as voluntary lessors. The parties have exchanged initial written discovery requests, and the court has heard the parties' objections and decided which of these requests the parties must answer, (Docket Item

1

No. 174) ("Memorandum Order").  Subsequently, EQT filed the Motion seeking entry of a protective order to avoid producing emails and other electronically stored information, ("ESI"), in response to the plaintiff's discovery requests.

In support of the Motion, EQT has provided the Declaration of James Perkins, (Docket Item No. 170, Att. No. 2) ("Perkins Declaration"). Perkins is a principal with Innovative Discovery, LLC, which provides litigation support services such as processing and producing emails and other ESI.  According to Perkins, EQT has provided Innovative Discovery, LLC, ("ID"), with files containing emails, ("EQT Email Files").  These files contain approximately 370 gigabytes, ("GBs"), of data, which Perkins estimates to contain 5,550,000 documents.  EQT has provided no information to the court with regard to what information is contained in the EQT Email Files or how it gathered these files. EQT also has provided no information to the court regarding any costs associated with gathering the EQT Email Files.

According to Perkins, ID would charge EQT $275 per GB, or $101,750.00 total, to "process" the EQT Email Files.  This cost would include removing duplicates and placing the remaining ESI into a database for review.  Once the ESI is placed in a database, ID would charge EQT $9,250 per month for "storage and hosting."  The Perkins Declaration provides varying estimates of up to in excess of $4 million to conduct an attorney review of the documents contained in this database for responsiveness and privilege.

EQT also has identified eight key EQT employees whose emails would most likely contain responsive information.  These employees include Nicole Atkison,

2

Louise Bugna, Rick Crites, George B. Heflin, Rita McGlothlin-Barrett, Janet Minyard, Melissa Richey and Ken Kirk, ("Key Employees"). EQT has advised ID that the Key Employees' email files contain 68.86 GB of data, which ID would "process" for a charge of $18,936.50 total. After processing, Perkins estimates that this database would contain approximately 774,675 individual documents. The Perkins Declaration provides varying estimates of up to in excess of $778,000.00 to conduct an attorney review of the documents contained in this database for responsiveness and privilege.

On May 8, 2012, the Court entered an Order requiring the parties to file any proposals they wished the court to consider with regard to search terms that might be used to limit the number of emails to be produced by EQT in response to the plaintiff's discovery requests. The parties each filed a proposal with regard to the search terms that might be used, (Docket Item Nos. 195, 196). David Seltz, one of plaintiff's counsel, also filed a declaration, (Docket Item No. 197) ("Seltz Declaration"). Attached to the Seltz Declaration were a number of communications between counsel for the parties regarding proposed search terms and the number of emails produced when these search terms were used to search the emails of two Key Employees – Rita McGlothlin-Barrett and Rick Crites, (Docket Item No. 197, Att. Nos. 1-7).

These attachments show that EQT, itself, has the capability of running searches of a particular employee's email files for a specific period of time using one or more search terms in combination. EQT has not provided the court with any cost estimate associated with its own searches of its email files. A May 11, 2012, email from defense counsel shows the results of EQT's running of a search with plaintiff's

3

proposed search terms on the emails of McGlothlin-Barrett and Crites. (Docket Item No. 197, Att. No. 2) ("Massie May 11 Email").  According to defense counsel, this search produced 184,378 emails. A subsequent email from defense counsel admits, however, that the 184,378 figure previously provided was a total of the responses for each search term and, therefore, may have included numerous duplicate emails, (Docket Item No. 197, Att. No. 3) ("Massie May14 Email").

A protective order has been entered in this case, (Docket Item No. 114) ("Protective Order"). The Protective Order allows a disclosing party to designate documents or other materials, including ESI, as "confidential."  Under the Protective Order "confidential" material may be used "only for the purpose of this action." The Protective Order also limits the persons to whom "confidential" material may be further disclosed.

A Protective Order Allowing Clawback Rights also has been entered in this case, (Docket Item No. 119) ("Clawback Order").  In particular, the Clawback Order states, in part: "The producing party is specifically authorized to produce Protected Documents without a prior privilege review, and the producing party shall not be deemed to have waived any privilege or protection in not undertaking such a review."  "Protected Documents" are defined by the Clawback Order as "any information or documents that are subject to an objection on the basis of attorney-client privilege or the work-product doctrine or any other privilege or immunity against discovery."  The Clawback Order also states that any party who receives Protected Documents shall return them upon request from the producing party.

*II. Analysis*

The proliferation of electronically stored information, or ESI, and its production in discovery present great challenges to today's civil litigants and the courts.

> Computerized data have become commonplace in litigation. The sheer volume of such data, when compared with conventional paper documentation can be staggering. … One gigabyte is the equivalent of 500,000 typewritten pages….
> For the most part, such data will reflect information generated and maintained in the ordinary course of business. As such, discovery of relevant and nonprivileged data is routine and within the commonly understood scope of [Federal Rules of Civil Procedure] 26 and 34.

MANUAL FOR COMPLEX LITIGATION, (FOURTH), §11.446 (2004); *see also* The Sedona Conference[1], *The Sedona Conference Cooperation Proclamation* 1 (2008), *available at* http://www.thesedonaconference.org/download-pub/291 (last visited May 31, 2012) ("The costs associated with adversarial conduct in pre-trial discovery have become a serious burden to the American judicial system. This burden rises significantly in discovery of electronically stored information ("ESI"). In addition to rising monetary costs, courts have seen escalating motion practice, overreaching, obstruction, and extensive, but unproductive discovery disputes — in some cases precluding adjudication on the merits altogether...").

In 2006, Federal Rule of Civil Procedure 26 was amended "to address issues raised by difficulties in locating, retrieving, and providing discovery of some

---

[1] The Sedona Conference is a nonprofit research and educational institute dedicated to the advanced study of law and policy, including complex litigation and discovery of electronically

electronically stored information." FED. R. CIV. P. 26(b)(2) advisory committee's note 2006 amendment. Under Rule 26, a party can avoid the production of responsive ESI if the party can demonstrate that the information is "not reasonably accessible because of undue burden or cost." FED. R. CIV. P. 26(b)(2)(B); *see Calixto v. Watson Bowman Acme Corp.*, 2009 WL 3823390 (S.D. Fla. Nov. 16, 2009). If the responding party makes this showing, "the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C)." FED. R. CIV. P. 26(b)(2)(B). Rule 26(b)(2)(C) requires the court to weigh "the burden or expense of the proposed discovery" against "its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." FED. R. CIV. P. 26(b)(2)(C).

Under these rules, some courts have allowed discovery of ESI but, based on the burden or expense, have shifted some or all of the costs of retrieval and production to the requesting party. *See Peskoff v. Faber,* 244 F.R.D. 54 (D.D.C. 2007); *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309 (S.D.N.Y. 2003); *see also Universal Del., Inc. v. Comdata Corp.*, 2010 WL 1381225 (E.D. Pa. Mar. 31, 2010). Some of these courts, however, have held that cost-shifting is available only when the information sought is relatively inaccessible, and this inaccessibility is the the cause of the undue burden or cost to the producing party. *See Helmert v. Butterball, LLC*, 2010 WL 2179180 (E.D. Ark. May 27, 2010) ("…[c]ourts should not consider cost shifting when ESI is kept in an accessible format"); *Peskoff v. Faber,* 240 F.R.D. 26, 31 (D.D.C. 2007); *Zubulake*, 217 F.R.D. at 324.

---

stored information.

Accessibility, however, is not the issue before the court on the Motion. EQT admits that the emails are readily accessible. Furthermore, EQT does not argue that the emails at issue do not contain relevant and material evidence. Instead, the issue before the court is whether otherwise accessible, responsive documents should not be produced because of the high cost of reviewing those documents for privileged or responsive information, or, in the alternative, whether the cost of such review should be shifted to the requesting party.

I start my analysis on this issue by recognizing that "the presumption is that the producing party should bear the cost of responding to properly initiated discovery requests." *Thompson v. U.S. Dep't of HUD*, 219 F.R.D. 93, 97 (D. Md. 2003); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978) (the party responding to a discovery request ordinarily bears the expense associated with doing so). Also, "[a] party that seeks an order from the court that will allow it to lessen the burden of responding to allegedly burdensome electronic records discovery bears the burden of particularly demonstrating that burden and of providing suggested alternatives that reasonably accommodate the requesting party's legitimate discovery needs." *Hopson v. Mayor & City Council of Baltimore*, 232 F.R.D. 228, 245 (D. Md. 2005).

There is little case law on the issues of whether the cost of a privilege or other review can be shifted to the requesting party or whether discovery should be limited based on the cost of review. *See Rodriguez-Torres v. Gov't Dev. Bank of P.R.*, 265 F.R.D. 40, 44 (D.P.R. 2010) (court considered cost of privilege and confidentiality review in addition to cost of production in finding that the ESI requested was not

7

reasonably accessible because of undue burden and cost); *see also Universal Del., Inc.*, 2010 WL 1381225 (court ordered shifting of cost of production but not costs of privilege review).  As stated above, Rule 26(b)(2)(C) gives the court the ability to "limit the frequency or extent of discovery" – regardless of accessibility – whenever "the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(2)(C)(iii).  Based on this, and the court's "wide latitude in controlling discovery," *Ardrey v. United Parcel Serv.*, 798 F.2d 679, 682 (4th Cir. 1986), I hold that the court may consider the cost of review of ESI for privileged or responsive information in deciding whether discovery imposes an undue burden or cost on a responding party. Furthermore, if the court were inclined to limit discovery based on the burden or cost of the review, I hold that the court could shift the costs of that review, either in whole or in part, to the requesting party.

There is, however, another, more practical, approach available to the court in this case. As Magistrate Judge Grimm noted in *Hopson*, the more practical approach is to avoid the necessity of an expensive and time-consuming privilege review by entry of a court order with a clawback provision that protects against a claim of waiver by production of a privileged document. *See* 232 F.R.D. at 232, 239 (judicially compelled disclosure of otherwise privileged information is not a waiver of any privilege that could be claimed); *see also Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 262 (D. Md. 2008) (court-approved nonwaiver agreement, such as discussed in *Hopson*, protects parties against waiver of privileges). This is especially true in light of the near impossibility of the use of search and information retrieval methodology to find and withhold all privileged ESI from production. *See Victor Stanley, Inc.,* 250 F.R.D. at 262.

As stated above, protective orders have been entered in this case. One of these orders, the Clawback Order, specifically states that any production made without a privilege review "shall not be deemed to have waived any privilege…." Furthermore, defense counsel has suggested that the court allow EQT to withhold any emails to and from in-house and outside legal counsel to reduce the risk of producing attorney-client privileged information. Based on this, the court is not persuaded that any review of the ESI is necessary to protect privileged information.

With regard to ensuring the responsiveness of the emails provided, the information before the court shows that EQT itself has the ability to filter the emails by custodian, by date and by combination of one or more search terms or keyword searches. *See Spieker v. Quest Cherokee, LLC*, 2009 WL 2168892 (D. Kan. July 21, 2009) (defendant could conduct search for ESI using its own employees, making the defendant's reliance of an estimate from a vendor "greatly exaggerated;" court rejected argument ESI not reasonably accessible). "'[A]lthough basic keyword searching techniques have been widely accepted both by courts and parties as sufficient to define the scope of their obligation to perform a search for responsive documents,'" *see Victor Stanley, Inc.*, 250 F.R.D. at 261 (quoting ESI Symposium, *The Sedona Conference Best Practices Commentary On The Use of Search & Information Retrieval Methods in E-Discovery*, 8 Sedona Conf. J. 189, 201) (2007) (hereinafter "*Search Best Practices*"), this court is aware of their limitations. "[T]he experience of many litigators is that simple keyword searching alone is inadequate … because simple keyword searches end up being both over- and under-inclusive…." *Search Best Practices* at 201; *see also George L. Paul & Jason R. Baron, Information*

*Inflation: Can the Legal System Adapt?*, 13 Rich. J.L. & Tech 10, at *38, 40 (2007) ("[I]t is not surprising that lawyers and those to whom they delegate search tasks may not be particularly good at ferreting out responsive information through the use of simple keyword search terms…. Accordingly, the assumption on the part of lawyers that *any* form of present-day search methodology will fully find 'all' or 'nearly all' available documents in a large, heterogeneous collection of data is wrong in the extreme").

EQT has not asserted that this filtering is of any burdensome expense. Insofar as EQT argues that any such production would need to be reviewed for confidential business information, the court could order that all emails be treated as "confidential" under the Protective Order. Thus, any sensitive business information contained in the produced emails would be protected from any further disclosure. Also, if the court orders EQT to turn over the emails retrieved by one or more of the filtered or keyword searches suggested by the parties, plaintiff's counsel would then bear the burden of review to inform the court whether the ESI produced was over-inclusive or under-inclusive. If necessary, the court, with input from the parties, could order additional production based on further refined or broadened searches. I find such an approach reasonable under the circumstances.

### III. Conclusion

Based on the above-stated reasons, the Motion will be granted in part and denied in part. An appropriate order will be entered.

ENTERED this 31st day of May, 2012.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE