## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | |
|---|---|
| EVA MAE ADKINS, etc.,  ) | |
|     Plaintiff,  ) | |
| ) | **MEMORANDUM OPINION** |
| v.  ) | Case No. 1:10cv00041 |
| ) | |
| EQT PRODUCTION COMPANY,  ) | |
|     Defendant  ) | |

This matter is before the undersigned on the Plaintiffs' Motion To Compel, (Docket Item No. 202) ("Motion"). None of the parties have requested oral argument. Based on the written arguments and representations of counsel, and for the reasons stated below, the Motion will be granted in part and denied in part.

*I. Facts and Procedural History*

The plaintiff, Eva Mae Adkins, sues on behalf of herself and others similarly situated. Adkins currently sues EQT Production Company, (formerly known as Equitable Production Company and Equitable Resources Energy Company) ("EQT"). The Second Amended Complaint alleges that Adkins and the class members own certain gas estate interests in coalbed methane, ("CBM"), gas fields in Dickenson County, Virginia, and are entitled to royalty payments from EQT as voluntary lessors.  The parties have exchanged initial written discovery requests, and the court has heard the parties' objections and decided which of these requests the parties must answer, (Docket Item No. 174) ("Memorandum Order").

1

Subsequently, EQT served supplemental discovery responses along with EQT's Amended Third Privilege Log, (Docket Item No. 203, Att. No. 1).

According to the Amended Third Privilege Log, EQT withheld from production certain documents under claims of attorney-client privilege or the work-product doctrine. The withheld documents fall primarily into two categories. Entries 101-115.1, 115.3-122, 127-129 and 132-132.1 on the Privilege Log involve communications between EQT's counsel and Sharon Pigeon, a long-time assistant attorney general who represents the Virginia Gas and Oil Board ("Board"). Entries 79-81, 85, 87-89 and 91 are documents purporting to reflect title work done by EQT with regard to EQT's applications to the Board for pooling orders. The Motion seeks to compel production of these specific documents.

Subsequent to the filing of the Motion, EQT filed a "Second Amended Third Privilege Log," (Docket Item No. 199, Att. No. 1) ("Privilege Log"). According to the Privilege Log, EQT has now determined that entries 79-80 and 87-89 are not responsive to Adkins's discovery requests because these documents regard property located in West Virginia. EQT also asserts that entries 85 and 91 are not responsive to Adkins's discovery request because these documents do not regard property with conflicting claims to the coalbed methane. EQT continues to assert that entry 81 is protected from production by the attorney-client privilege and/or work-product doctrine.

*II. Analysis*

The party objecting to discovery on the basis of any privilege has the burden

2

of establishing the existence and application of that privilege. *See Spell v. McDaniel*, 591 F. Supp. 1090, 1116 (E.D.N.C. 1984). Furthermore, evidentiary privileges are not favored.

> …The Supreme Court in addressing the general issue of evidentiary privileges has stated: "Whatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed for they are in derogation of the search for the truth." *United States v. Nixon*, 418 U.S. 683, 710 … (1974). The law will sustain a claim of privilege only when absolutely necessary to protect and preserve an interest of significant public importance that the asserted privilege is designed to serve. *United States v. Mandel*, 415 F. Supp. 1025 (D. Md. 1976).

*Spell*, 591 F. Supp. at 1116. Therefore, evidentiary privileges should be "strictly construed and accepted only to the very limited extent that … [what they protect] transcend[s] the normally predominant principle of utilizing all rational means for ascertaining truth." *Trammel v. United States*, 445 U.S. 40, 50-51 (1980) (internal quotation and citation omitted); *see also Branzburg v. Hayes*, 408 U.S. 665, 688 (1972) (privileges strictly construed because "the public … has a right to every man's evidence"). Adkins's remaining claims are Virginia state law claims before the court based on diversity of citizenship. Therefore, Virginia state law governs EQT's assertion of privilege. *See* FED. R. EVID. 501; *Commercial Union Ins. Co. of Am. v. Talisman, Inc.,* 69 F.R.D. 490, 491 (E.D. Mo. 1975).

EQT asserts that the documents at issue are protected from production by either the attorney-client privilege or the work-product doctrine. Under Virginia law "[c]onfidential communications between attorney and client made because of that

3

relationship and concerning the subject matter of the attorney's employment 'are privileged from disclosure, even for the purpose of administering justice.'" *Commonwealth v. Edwards*, 370 S.E.2d 296, 301 (Va. 1988) (quoting *Grant v. Harris*, 82 S.E. 718, 719 (Va. 1914)). "Nevertheless, the privilege is an exception to the general duty to disclose, is an obstacle to investigation of the truth, and should be strictly construed." *Edwards*, 370 S.E.2d at 301; *see In re Grand Jury Proceedings,* 727 F.2d 1352, 1355 (4th Cir. 1984) (privilege not favored by federal courts and "is to be strictly confined within the narrowest possible limits….").

The privilege belongs to the client and may be expressly waived or impliedly waived by conduct. *See Edwards* 370 S.E.2d at 301. "The proponent has the burden to establish that the attorney-client relationship existed, that the communications under consideration are privileged, and that the privilege was not waived." *Edwards*, 370 S.E.2d at 301 (citing *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982)).

> In deciding whether the privilege has been waived by implication "regard must be had to the double elements that are predicted in every waiver, i.e., not only the element of implied intention, but also the element of fairness and constancy. A privileged person would seldom be found to waive, if his intention not to abandon could alone control the situation. There is always also the objective consideration that when his conduct touches a certain point of disclosure, fairness requires that his privilege shall cease whether he intended that result or not. He cannot be allowed, after disclosing as much as he pleases, to withhold the remainder. He may elect to withhold or to disclose, but after a certain point his

4

election must remain final."

*Edwards*, 370 S.E.2d at 301 (quoting 8 J. Wigmore, Evidence §2327, at 636 (McNaughton Rev. 1961)).

Under Virginia law, the work-product doctrine is closely related to the attorney-client privilege. *See Edwards*, 370 S.E.2d at 302; *see also* Rules of Sup. Ct. of Va. Rule 4:1(b)(3) (2011.) "'Work product' generally is defined as 'the produce of a party's investigation or communications concerning the subject matter of a lawsuit if made (1) to assist in the prosecution or defense of a pending suit, or (2) in reasonable anticipation of litigation.' BLACK'S LAW DICTIONARY 1600-01 (7th ed. 1999)." *Virginian-Pilot Media Cos., LLC v. City of Norfolk School Bd.*, 81 Va. Cir 450, 2010 WL 7765117, at *8 (Dec. 28, 2010). "Generally, material such as 'interviews, statements, memoranda, correspondence, briefs, mental impressions, [and] personal beliefs,' which are 'prepared by an adversary's counsel with an eye toward litigation' may be free from discovery." *Edwards*, 370 S.E.2d at 302 (quoting *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)).

Virginia also has recognized that the "common interest" doctrine extends the attorney-client privilege and work-product doctrine to communications between co-parties, other interested persons and their counsel. *See Hicks v. Commonwealth*, 439 S.E.2d 414, 416 (Va. Ct. App. 1994); *In re Grand Jury Subpoenas*, 902 F.2d 244, 249 (4th Cir. 1990). "Whether an action is civil or criminal, potential or actual, whether the commonly interested parties are plaintiffs or defendants, 'persons who share a common interest in litigation should be able to communicate with their

respective attorneys and with each other to more effectively prosecute or defend their claims.'" *Hicks*, 439 S.E.2d at 416 (quoting *In re Grand Jury Subpoenas*, 902 F.2d at 249).

> The common interest privilege recognizes the advantages of, and even necessity for, an exchange or pooling of information among attorneys representing parties sharing a common legal interest in litigation. … It extends the scope of the attorney-client privilege by providing an exception to the general rule that communications made in the presence of or shared with third parties are not protected by the attorney-client privilege. …
> The common interest privilege widens the circle of person to whom clients may disclose privileged communications. It permits the participants in a joint defense to communicate among themselves and with their attorneys on matters of common legal interest for the purpose of coordinating their joint legal strategy.

*Boyd v. Comdata Network, Inc.,* 88 S.W.3d 203, 213-14 (Tenn. Ct. App. 2002) (internal citations omitted). Common interest assertions involving government agencies, however, must be carefully scrutinized. *See Hunton & Williams v. U.S. Dep't of Justice,* 590 F.3d 272, 274 (4th Cir. 2010). "For the doctrine to apply, an agency must show that it had agreed to help another party prevail on its legal claims at the time of the communications at issue because doing so was in the public interest." *Hunton & Williams,* 590 F.3d at 274.

Thus, in this case, EQT has the burden of demonstrating that the documents that it wishes to withhold from production are protected by either the attorney-client privilege or the work-product doctrine. Furthermore, if protected, EQT must demonstrate that any revelation of these documents to third-persons was appropriate

6

under the common interest doctrine and did not operate as a waiver of the documents' protection from production in discovery. As stated above, the documents EQT wishes to withhold from production fall into two categories. The first category includes communications between EQT's counsel and Pigeon, the assistant attorney general who represents the Board; the second category includes documents purporting to reflect title work done by EQT with regard to EQT's applications to the Board for pooling orders.

Regarding the first category, the communications between EQT's counsel and Pigeon, I find that EQT has failed to demonstrate that the documents withheld from production are protected by the common interest doctrine. As a starting point, I note that the Commonwealth of Virginia has not intervened in this action, although the Commonwealth was allowed to intervene in a related matter for the limited purpose of defending the constitutionality of the Virginia Gas and Oil Act, ("Act"). *See* Judge Jones's August 19, 2010, Order, (Docket Item No. 84), in *Adair v. EQT*, Civil No. 1:10cv00037. According to the Commonwealth's own filings, its interest in that litigation is very limited.

> The Commonwealth has no interest in the purely private aspects of this case, such as who ultimately owns the rights to the coalbed methane gas, or whether the plaintiffs have joined all the necessary parties. The Commonwealth intervened to defend a statute from allegations that it is unconstitutional if construed according to its plain language. Accordingly the Commonwealth limits this motion to the "takings" claim and to offer its perspective concerning the proper interpretation of Virginia law.

*Adair v. EQT*, Civil No. 1:10cv00037 (Docket Item No. 109 at 1.)  Thus, the

Commonwealth's only "common interest" with EQT in that litigation is to defend the Act against constitutional attack. Entries 101-122, 127-129 and 132-132.1 on the Privilege Log make no mention of any discussion or exchange of information regarding the constitutionality of the Act. At best, entries 101-103.1, which refer to a hearing where the constitutional arguments were addressed by the court, may be covered by the common interest doctrine -- if it can be shown that these documents involved communications regarding the constitutionality of the Act. Based on the information provided on the Privilege Log by EQT, the remaining entries at issue, 104-122, 127-129 and 132-132.1, do not concern any discussions of the constitutionality of the Act. I further note that none of this category of entries was a communication with either of the two representatives of the Attorney General's Office who entered an appearance on behalf of the Commonwealth in the related case. Based on all this, and keeping in mind that evidentiary privileges are disfavored, I find that entries 104-122, 127-129 and 132-132.1 are not protected from production in discovery by the common interest doctrine. Even assuming for the purpose of this Motion that these documents contained privileged information, any privilege was waived by their production to a third party. *See Front Royal Ins. Co. v. Gold Players, Inc.*, 187 F.R.D. 252, 257-58 (W.D.Va. 1999); *see also In re Grand Jury 83-2,* 748 F.2d 871, 875 (4th Cir. 1984).

With regard to Privilege Log entries 101-103.1, I will grant EQT an appropriate period of time to supplement the information provided regarding these communications to show, if possible, that these communications did involve the parties' common interest regarding the constitutionality of the Act. If EQT cannot demonstrate that these communications involved discussion of the constitutionality

8

of the Act, they, too, shall be produced.

Regarding the second category of documents, those documents regarding EQT's title work, I find that one of these documents is protected from production by the attorney-client privilege and/or the work-product doctrine. Entry No. 81 states that it is a memorandum concerning the advice of counsel regarding potential litigation against a surface owner. As such, it is protected from production. From the descriptions of the other entries provided on the Privilege Log, it appears the other documents, entries 79-80, 85, 87-89 and 91, either refer to property located in West Virginia or property on which there are no conflicting claims of ownership of the coalbed methane. In either case, these documents would not be responsive to Adkins's request because they do not concern wells covered by the proposed class.

### III. Conclusion

Based on the above-stated reasons, the Motion will be granted in part and denied in part. An appropriate order will be entered.

ENTERED this 28th day of June, 2012.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE